Filed 3/28/14; pub. order 4/22/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re ASHLY F. et al., Persons Coming Under the Juvenile Court Law. | B250742 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. T.A. , Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK98890) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Carlos E. Vazquez, Judge.  Reversed and remanded with directions.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Tracey F. Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

After a combined jurisdictional and dispositional hearing the juvenile court found jurisdiction over Ashly F. and her sister Cristina F. under Welfare and Institutions Code section 300, subdivisions (a), (b) and (j)[1] and ordered the children removed from their home. T.A. (Mother) appeals only the dispositional order. We conclude the evidence does not support the court's findings that the Department of Children and Family Services made "reasonable efforts" to prevent the children's removal and that there were no "reasonable means" to protect the children other than removing them from their home. Accordingly, we reverse the dispositional order and remand the cause to the juvenile court for further proceedings in accordance with law.

### FACTS AND PROCEEDINGS BELOW

The family came to the attention of the Department of Children and Family Services (DCFS) when a DCFS worker and a police officer came to the family home in response to a report of suspected child abuse.

P.F., the half-sister of Ashly and Cristina, told the worker that Mother had beaten her for stealing a wallet at church. According to P.F., Mother used an extension cord to strike her on her head, face and arms. The worker observed dark bruises under P.F.'s eyes and lateral marks on her upper left arm. P.F. said that Mother often beat her with extension cords, belts and clothes hangers. In this particular incident Mother hit her many times with an extension cord and she fell backward onto her bed. When Mother kept hitting her, and she raised her arms to protect herself, Mother whipped her on the arm. Afterward, P.F. said her head hurt and she was bleeding from the top of her head. Her left eye also hurt and was swollen. Mother did not attempt to administer first aid and when P.F.'s father came home, Mother told him she did not regret "anything I did to her. She deserved it."

---

[1]     All statutory references are to the Welfare and Institutions Code.

While at the home the DCFS worker interviewed five-year-old Cristina. Cristina showed the worker a cut on one of her palms and said Mother had cut her with a belt. She told the worker that Mother often used a belt or a hanger to discipline her.

The worker then went to the children's elementary school to talk to Cristina's sister, Ashly. Ashly admitted that sometimes Mother hit her with a plastic hanger and had hit her with cords and belts "a long time ago." In a subsequent interview Ashly told the worker that Mother had hit her with a thin hanger and it did not hurt although it left red welts on her arms, legs and hands.

Mother admitted hitting P.F. with an extension cord for stealing the wallet. She said she was aiming at P.F.'s buttocks but the girl moved and the cord hit her in the face. Mother claimed she only hit P.F. two or three times. When asked how she usually disciplined the children Mother said she uses her hand or sometimes a "soft" belt. She used hangers "only to tap them."

The worker interviewed the children's father, I.F. (Father), who stated that he was asleep when the incident arose between P.F. and Mother. When he saw P.F.'s injuries he told Mother never to discipline any of the children like that again or their relationship would end. He treated P.F.'s injuries with witch hazel, peroxide, alcohol and over-the-counter pain medication. He did not believe she needed to see a doctor. Father told the worker that he was unaware of the beatings Mother gave the children in the past because they had never told him about them.

DCFS removed Ashly and Cristina from their home and placed them in protective custody with their maternal aunt and uncle. In a petition filed under section 300, subdivisions (a), (b) and (j), DCFS alleged that the two children were at risk of physical harm due to Mother's "excessive physical abuse" and Father's failure to protect them.[2]

In its report for the detention hearing DCFS stated that there were "no reasonable means by which the [children's] physical or emotional health may be protected without

---

[2] The court also sustained a petition as to P.F. and her sister, J.F. Their case is not included in this appeal.

removing the [children] from the parents' or guardians' physical custody." The report did not mention any reasonable alternatives to removal from the home that had been tried and failed or that had been considered and rejected. The report did state that the family was "referred to ARS services however it is unknown if family complied and followed through with services." (The record does not show that anyone at DCFS checked.)[3]

The court found that a prima facie case was established for detaining the children under section 300, subdivisions (a), (b) and (j); that there were no reasonable means to protect the children from physical or emotional harm other than to remove them from their home; and that "[r]easonable efforts have been made to prevent or eliminate need for [the children's] removal from home." The court did not identify or describe those "reasonable means" and "reasonable efforts" nor does the record show that the court inquired into the availability of services "that would prevent or eliminate the need to detain the child or that would permit the child to return home" as required by California Rules of Court, rule 5.678(c)(2).

Mother was allowed monitored visitation with the children; Father was permitted unmonitored visits. DCFS was ordered to provide family reunification services to the parents and the children and to prepare a prerelease investigative report on Father.

Between the detention hearing and the combined jurisdiction and disposition hearing Mother was arrested and convicted of misdemeanor child abuse. She was placed on probation and ordered to do community service and attend a 52 week parenting class. Mother moved out of the family home and Father told DCFS that he did not know where she was residing.

For the combined jurisdiction and disposition hearing, DCFS reported that Mother was attending parenting classes and regularly visiting Ashly and Cristina. Mother

---

[3]     ARS stands for Alternative Response Services. Under ARS the child welfare agency responds to cases where the risk of harm to the child is minimal with services that are "less invasive" than those needed in more intensive, high risk cases. (Zielewski, et al. Families' Connections to Services in an Alternative Response System (2006) The Urban Institute.)

admitted losing her temper and using physical discipline on P.F.  She stated she would enroll in an anger management class as soon as her work schedule was set.  Mother denied "striking" the children with objects.  She stated she would only "tap" them with a hanger "or throw something at them, not hard," to get their attention.  The DCFS worker observed that Mother "is committed to her children doing well in school and helps them with their school work."

The report recommended that the children continue in an out-of-home placement.  It stated that "there are no reasonable means by which the child(ren)'s physical health can be protected without removing the child(ren) from the physical custody of the child(ren)'s parents . . ." and that "[r]easonable efforts were made to prevent or to eliminate the need for removal of the [children] from [their] home."  Again the report did not state what "reasonable means" for protecting the children DCFS had considered nor what "reasonable efforts" it had made to eliminate the need to remove the children from their home.  The report stated that "the family has been provided with Family Reunification Services including but not limited to referrals for services, Family Reunification Services, case management, and visitation."  The report did not state that DCFS had conducted the prerelease investigation report on Father as it was directed to do at the detention hearing.  The report did state that a DCFS worker had an appointment with Father to assess his home but the record does not show whether this appointment was kept nor the result of the assessment.

Mother testified at the hearing.  She told the court she was remorseful for her conduct toward P.F.  She denied striking the children with shoes and clothes hangers.  She stated she only used such objects to "tap" the children to get their attention.  Mother confirmed that she was attending parenting classes.  Finally, Mother testified she had just moved back in with Father since the children were not in the home.  No one else testified.

The court sustained the petition under section 300, subdivisions (a), (b) and (j).

As to disposition, the court stated that it had read and considered the DCFS reports and admitted them into evidence.  The court found "by clear and convincing evidence"

5

that "[t]here are no reasonable means by which the children's physical and emotional health could be protected without removing them from the parents' physical custody." The court further found that "[r]easonable efforts were made to prevent and eliminate the need for the children's removal." Again, the court made no inquiry of DCFS regarding available services that would eliminate the need to further detain the children. (Cal. Rules of Court, rule 5.678(c)(2).) Ashly and Cristina remained placed in the home of their aunt and uncle.

Mother filed a timely appeal arguing substantial evidence does not support the court's disposition. We agree.[4]

## DISCUSSION

On appeal from a dispositional order removing a child from a parent we apply the substantial evidence standard of review, keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence. (*In re Noe F.* (2013) 213 Cal.App.4th 358, 367.)

Under section 361, subdivision (c)(1) children may not be removed from their home "unless the juvenile court finds clear and convincing evidence" of a substantial danger to the children's physical health, safety, protection, or physical or emotional well-being "and there are no reasonable means" for protecting the children other than removal from their home. The statute "is clear and specific: Even though children may be dependents of the juvenile court they shall not be removed from the home in which they are residing at the time of the petition unless there is clear and convincing evidence of a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being *and* there are no 'reasonable means' by which the child can be protected without removal." (*In re Jasmine G.* (2000) 82 Cal.App.4th 282, 288; italics in original.)

---

[4]    Father is not a party to this appeal.

6

To aid the court in determining whether "reasonable means" exist for protecting the children, short of removing them from their home, the Rules of Court require DCFS to submit a social study which "must include" among other things: "A discussion of the reasonable efforts made to prevent or eliminate removal[.]" (Cal. Rules of Court, rule 5.690(a)(1)(B)(i).) No discussion of reasonable efforts appears in the record in this case. As noted above, the DCFS report merely stated in perfunctory language that "[r]easonable efforts were made to prevent or to eliminate the need for removal of the [children] from [their] home." No supporting evidence was offered. Likewise, the DCFS report stated in conclusory fashion that "there are no reasonable means by which the child(ren)'s physical health can be protected without removing the child(ren) from the physical custody of the child(ren)'s parents[.]" Again, DCFS did not describe the "reasonable means" it had considered and rejected.[5]

The court also failed to carry out its duties in making the decision to remove Ashly and Cristina from their home.

Section 361, subdivision (d) provides that "[t]he court shall make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home[.] . . . The court shall state the facts on which the decision to remove the minor is based." Here, the court concluded that "[r]easonable efforts were made to prevent and eliminate the need for the children's removal." The court did not "state the facts" supporting its conclusion.

In addition, the court was required to "consider, as a reasonable means to protect the minor, the option of removing an offending parent . . . from the home." (§ 361, subd. (c)(1).) Nothing in the record shows that the court considered this option even though the evidence showed that it was available. The record shows that Mother removed herself from the family home following the detention hearing and had moved

---

[5]    We leave for another day the question how DCFS could have made "reasonable efforts" to prevent removal of the children if, as it claims, there were no "reasonable means" of preventing their removal.

7

back just prior to the jurisdiction hearing because the children were not present and to save the family the cost of renting two residences.

"[O]ur dependency system is premised on the notion that keeping children with their parents while proceedings are pending, whenever safely possible, serves not only to protect parents' rights but also children's and society's best interests." (*In re Henry V.* (2004) 119 Cal.App.4th 522, 530.) The requirement for a discussion by the child welfare agency of its reasonable efforts to prevent or eliminate removal (Cal. Rules of Court, rule 5.690(a)(1)(B)(i)) and a statement by the court of the facts supporting removal (§ 361, subd. (d)), play important roles in this scheme. Without those safeguards there is a danger the agency's declarations that there were "no reasonable means" other than removal "by which the [children's] physical or emotional health may be protected" and that "reasonable efforts were made to prevent or to eliminate the need for removal" can become merely a hollow formula designed to achieve the result the agency seeks.

DCFS and the court committed prejudicial errors in failing to follow the procedures mandated by Legislature and Judicial Council for determining whether the children needed to be removed from their home. Ample evidence existed of "reasonable means" to protect Ashly and Cristina in their home. Mother had expressed remorse for the injuries she inflicted on P.F. and was enrolled in a parenting class "to learn other ways to discipline [her] children." By the time of the hearing Father had already completed a parenting class. Furthermore, "reasonable means" of protecting the children that should at least have been considered include unannounced visits by DCFS, public health nursing services, in-home counseling services and removing Mother from the home. (See *In re Henry V.*, *supra*, 119 Cal.App.4th at p. 527.)

Nothing in this opinion should be construed as condoning Mother's physical abuse of Ashly and Cristina as found by the court. The court's finding of physical abuse, however, is not the issue before us. The issue in this appeal is whether substantial evidence supports the order removing Ashly and Cristina from their home. A finding of parental abuse is not sufficient by itself to justify removing the child from the home.

(See *In re Henry V.*, *supra,* 119 Cal.App.4th at p. 531; *In re Jasmine G.*, *supra,* 82 Cal.App.4th at p. 293.)

On the record in this case there is a reasonable probability that had the juvenile court inquired into the basis for the claims by DCFS that despite its efforts there were no reasonable means of protecting the children except to remove them from their home the court would have found that claim was not supported by clear and convincing evidence. Accordingly, the court's dispositional order must be reversed and the cause remanded for a new hearing in conformity with the statutes and Rules of Court discussed above. We base our disposition on the facts existing at the time of the dispositional hearing which we determined from the record on appeal. On remand, the juvenile court must make its decision based on the facts existing at the time of the further proceedings.

## DISPOSITION

The dispositional order is reversed and the cause is remanded for further proceeding in accordance with law.


ROTHSCHILD, Acting P. J.

We concur:


JOHNSON, J.


MILLER, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 4/22/14

<u>CERTIFIED FOR PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re Ashly F. et al., Persons Coming Under the Juvenile Court Law,<br>_____<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>   v.<br><br>T.A.,<br><br>        Defendant and Appellant. | B250742<br>(Los Angeles County<br>Super. Ct. No. CK98890)<br><br>CERTIFICATION AND<br>ORDER FOR PUBLICATION |

       The opinion in the above-entitled matter filed March 28, 2014, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

ROTHSCHILD, Acting P. J.       JOHNSON, J.       MILLER, J.[*]

_____

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.