Filed 8/4/14  In re Mason P. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re MASON P., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D065767 |
| Plaintiff and Respondent, | (Super. Ct. No. J518888) |
| v. | |
| K.P., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Carol Isackson, Judge.  Affirmed.

Michele Anne Cella, by appointment of the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

K.P. appeals the dispositional order in the juvenile dependency case of her minor son, Mason P. (See Welf. & Inst. Code, § 361.)[1] K.P. contends the evidence was insufficient to support the court's order, which removed Mason from her custody. We disagree and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

On January 30, 2014, the San Diego County Health and Human Services Agency (the Agency) petitioned the juvenile court under section 300, subdivision (a), on behalf of six-month-old Mason. The Agency alleged that Mason had suffered injuries as a result of a fight between his parents, K.P. and Greg P., who have a history of domestic violence. The fight occurred after K.P. picked Greg up from a party where Greg, an active duty Marine, was working. Greg was intoxicated, and he and K.P. began to argue as K.P. drove home. Mason was in the car in a child safety seat. During the argument, Greg grabbed the steering wheel and forced the car towards a median. K.P. stopped the car, and Greg got out. As K.P. and Greg continued to argue, Greg attempted to remove Mason from the car. Without unbuckling Mason's car seat, Greg pulled on Mason's arm, causing him to cry out in pain. K.P. tried to stop Greg from taking Mason. The struggle caused an abrasion on the back of Mason's head and several red marks on his stomach. K.P. then bit Greg's hand, and he shoved her. Witnesses called police, and Greg was arrested at the scene. Greg was later charged with felony domestic abuse and felony child endangerment.

---

1    All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

2

Based on this incident, the Agency concluded that Mason had suffered serious physical harm inflicted nonaccidentally. At Mason's detention hearing, the court found that the Agency had made a prima facie showing under section 300, subdivision (a), and ordered that Mason be detained in out-of-home care. During the hearing, the court was informed that Greg's commanding officer had issued a military protective order (MPO) as a result of the incident. The MPO prohibited Greg from directly or indirectly contacting or communicating with K.P. The MPO also required Greg to leave their shared home and reside on his military base. Greg could not leave the base without a military escort. In light of the MPO, K.P. and the Agency agreed that the court did not need to issue a separate civil restraining order. Mason was placed in foster care and, later, with his maternal grandmother.

The family had come to the Agency's attention once before, when Mason was two months old. Greg had Mason on his lap but was not paying attention to him. Mason fell to the ground, and Greg jerked him upright by his arms. Mason was crying, and K.P. called police. K.P. took Mason to the hospital, but no injuries were detected. The Agency determined that allegations of general neglect against K.P. and physical abuse against Greg were unfounded. Emotional abuse allegations against Greg were found to be inconclusive. After this incident, K.P. and Greg agreed that Greg would leave home for a month. The Agency recommended voluntary services, but K.P. and Greg did not participate.

The Agency's investigation revealed a history of conflict, including violence, between K.P. and Greg. A number of 911 calls were made from their residence reporting

3

domestic violence.  K.P. told the Agency about two incidents in which she saw Greg as the aggressor.  In one incident, Greg threw K.P. against a wall because she tried to flush a bottle of Greg's Vicodin pills down the toilet.  K.P. said she was concerned that Greg would mix the Vicodin with alcohol and harm himself.  The police were called but no one was arrested.  In the other incident, Greg became angry with K.P. while he was intoxicated.  He forced K.P. and Mason (then three months old) out of the house and told K.P. to stay outside "like a dog."  K.P. called police and asked for their help.  K.P. also recalled other times when Greg was verbally abusive.  She told the Agency that Greg regularly changes the PIN number on their ATM card to prevent her from accessing money.

In interviews with the Agency, Greg depicted K.P. as the aggressor.  Greg denied ever hitting K.P. or abusing her.  Greg stated that K.P. would slap him, say things like "you're disgusting," and call him "pathetic" and "horrible."  A family friend confirmed that K.P. was verbally abusive and aggressive towards Greg.  The friend recalled K.P. saying to Greg, "[Y]ou're a horrible dad and I'm going to take Mason away from you." Another friend confirmed that Greg was "submissive" towards K.P.

The Agency obtained a police report regarding one incident between K.P. and Greg, where the police identified K.P. as the aggressor.  K.P. pushed Greg and struck him on the forehead with an open palm.  Greg's father was there, and he stated that he saw K.P. slap Greg on the face and chest several times.  The police asked Greg if he wanted to press charges against K.P., but he declined.

4

The Agency also uncovered an arrest record for K.P. as a result of a previous incident of domestic violence against her former husband. Though K.P. initially denied the arrest, and later claimed to take the blame for her then-husband's abuse against her, police reports of the incident showed that police considered K.P. to be the dominant aggressor. K.P. had bruises on her thighs, while her former husband had a scratch on his right cheek and red marks on the back of his neck and head from being punched. K.P. was arrested on charges of domestic abuse.

K.P. also displayed anger towards the Agency, complaining that her son was removed "for no good reason" and that his injuries were not serious. After K.P. was required to move out of her residence, in order to allow Mason to be placed with his maternal grandmother there, K.P. became angry that she was not allowed to move back in. She complained that Mason was unable to sleep without her and that his detention by the Agency had been unnecessary.

K.P. wrote the Agency that, despite the MPO, Greg continued do things "to get under [K.P.'s] skin" like deleting books from their Amazon.com account and encouraging mutual friends not to speak with her. K.P. also believed that Greg was being dropped off in town for visits, rather than escorted by military personnel as was represented to the court. K.P. believed Greg was a danger to Mason and could harm him in order to hurt K.P. K.P. said she wanted to obtain a civil restraining order against Greg. In a telephone call recorded while Greg was in custody, Greg encouraged a friend to tell K.P. that he loved her, that he was sorry, and that he had made a mistake.

5

In advance of the court's jurisdiction and disposition hearing, the Agency recommended that the court sustain the allegations of the petition and remove Mason from his parents' custody. With respect to K.P., the Agency stated: "The mother reports that she has stayed despite the violence with [Greg] because she doesn't want her marriage to fail. The mother has just recently started reaching out for support but she has great difficulty asking for help."

At the contested hearing, both K.P. and Greg argued that K.P. should have custody of Mason. In the alternative, K.P. requested that she be allowed to move back into her home with the maternal grandmother and Mason.

The court received stipulated testimony from an Agency social worker, as well as letters from Mason's maternal grandmother and K.P. The Agency social worker would testify that K.P.'s current therapist reported that K.P. had identified herself only as a victim in domestic violence situations. The therapist expressed surprise when she was informed that K.P. was also a perpetrator. In her letter, Mason's maternal grandmother expressed her support for Mason's placement with K.P. She reported that Mason was suffering physically and emotionally because he was not in K.P.'s care. She expressed her willingness to continue residing in the home or otherwise help ensure Mason's safety.

K.P.'s statement first addressed her arrest on domestic abuse charges against her former husband. K.P. stated that she was "equally guilty for the issues that arose, and [she] accepted full responsibility for [her] actions." Similarly, with respect to the incident that gave rise to Mason's dependency case, K.P. accepted that she was "equally guilty for having exposed Mason to a bad situation." She explained that she had been engaging in

6

services and they had been productive. K.P. stated that she wanted to protect Mason and would report any contact with Greg that would be violation of the MPO.

After hearing argument, the court made a true finding on the allegations of the petition. The court further found, by clear and convincing evidence, that there would be a substantial danger to Mason's physical health if he were returned to the custody of K.P. or Greg and that reasonable efforts were made to prevent or eliminate the need for removal. The court identified both the initial incident and K.P.'s lack of awareness of her role as an aggressor as risk factors. The court stated that it did "not have a high level of trust at this point in mother's judgment to make good decisions." The court therefore removed Mason from K.P. and Greg's custody. As K.P. requested, the court allowed K.P. to reside in the family home with Mason and his maternal grandmother. The court, however, prohibited K.P. from taking Mason out of the house without the grandmother and required the grandmother to be home with Mason at all times when K.P. was there. The court also prohibited K.P. from bringing any romantic partners or significant others to the house. The court ordered reunification services and visitation for K.P. and Greg. K.P. appeals.

## DISCUSSION

"Before the court may order a child physically removed from his or her parent's custody, it must find, by clear and convincing evidence, the child would be at substantial risk of harm if returned home and there are no reasonable means by which the child can be protected without removal." (*In re T.V.* (2013) 217 Cal.App.4th 126, 135 (*T.V.*); see § 361, subd. (c)(1).) "The parent need not be dangerous and the minor need not have

7

been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*T.V., supra*, at pp. 135-136; *In re Lana S.* (2012) 207 Cal.App.4th 94, 105.) In assessing the risk of harm, "the court may consider the parent's past conduct as well as present circumstances." (*In re Cole C*. (2009) 174 Cal.App.4th 900, 917.)

"On appeal from a dispositional order removing a child from a parent we apply the substantial evidence standard of review, keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence." (*In re Ashly F.* (2014) 225 Cal.App.4th 803, 809; *In re Henry V.* (2004) 119 Cal.App.4th 522, 529.) "In reviewing the sufficiency of the evidence on appeal, we consider the entire record to determine whether substantial evidence supports the juvenile court's findings. Evidence is ' "[s]ubstantial" ' if it is reasonable, credible and of solid value. [Citation.] We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence. Instead, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order, and affirm the order even if other evidence supports a contrary finding. [Citations.] The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or order." (*T.V., supra*, 217 Cal.App.4th at p. 133.) Our inquiry is thus limited to the question of whether the evidence would allow a reasonable trier of fact to make the findings required to support the challenged order. (See *In re Jasmon O.* (1994) 8 Cal.4th 398, 423.)

8

Here, substantial evidence supports the court's dispositional order removing Mason from K.P.'s custody. The evidence showed that K.P. and Greg had several violent confrontations, one of which resulted in serious physical harm to Mason. In some of these encounters, K.P. was the aggressor. K.P. also had a history of domestic violence with her former husband, including one instance when K.P. was arrested for domestic abuse because police determined she was the dominant aggressor. Although the Agency had previously advised K.P. to seek help for domestic violence, and she promised that Greg would leave home for a month, the violent altercations between K.P. and Greg escalated.

Although K.P. had participated in services, K.P. did not show that she had resolved her domestic violence issues by the time of the jurisdiction and disposition hearing. For example, K.P. did not disclose to her therapist that she had been an aggressor in domestic violence situations. She also minimized the risks to Mason from domestic violence and claimed his injuries were not significant. K.P.'s unresolved domestic violence issues raised a serious risk to Mason's physical health if he were placed with her. "Domestic violence is always a serious concern, and any propensity to it is certain highly relevant as regards children's welfare." (*Guardianship of Simpson* (1998) 67 Cal.App.4th 914, 938.)

K.P. argues that the presence of the MPO removed any risk of harm to Mason. We disagree. Given the evidence before it, the court could reasonably find that Mason would be at a substantial risk of harm in K.P.'s care notwithstanding the MPO. The evidence supported a finding that K.P., rather than Greg, was the primary source of

9

verbal and physical abuse in their relationship. While Greg was subject to the MPO, K.P. was under no such restriction. K.P.'s unresolved domestic violence issues created a risk that she could have violent encounters with Greg or another person that would harm Mason. Indeed, K.P. complained to the Agency that Greg was violating the MPO and indirectly continuing to harass her. Despite the MPO, Greg encouraged a friend to contact K.P. While K.P. said she wanted to obtain a civil restraining order, there is no evidence she did so. K.P. had remained with Greg despite previous domestic violence incidents and despite a prior promise to the Agency that Greg would leave the family home for a period. Unlike *In re Steve W.* (1990) 217 Cal.App.3d 10, cited by K.P., the evidence here does not show that K.P. will not resume her relationship with Greg. (See *id.* at p. 22.)

K.P. also argues that the juvenile court did not explicitly state its factual basis for removing Mason. (*In re Basilio T.* (1992) 4 Cal.App.4th 155, 171.) However, the court here referenced the initial incident, the court's lack of trust in K.P., her role as the aggressor, and K.P.'s failure to fully acknowledge that role. The court's statements are sufficient. Moreover, the evidence demonstrated substantial risk beyond simply K.P.'s failure to acknowledge her role, which distinguishes this case from *In re Jasmine G.* (2000) 82 Cal.App.4th 282, 289, cited by K.P.

K.P. claims that the court's decision to allow K.P. to live with Mason and his maternal grandmother in the family home contradicts the removal order. In *In re Damonte A.* (1997) 57 Cal.App.4th 894, the court reversed a removal order because the order simultaneously placed the child temporarily back with the parent. (*Id.* at p. 897.)

10

Placing the child with the parent effectively contradicted the required factual finding that placement with the parent would create a substantial risk of danger to the child. (See *id.* at p. 900; see also *In re Jasmine G., supra*, 82 Cal.App.4th at p. 293.) The court determined that the removal order was invalid. (*In re Damonte A., supra,* at p. 900.) Here, by contrast, the court did not place Mason in K.P.'s care. Mason remained in the care of the maternal grandmother. While K.P. was allowed to reside in the family home with them, she was prohibited from taking Mason out of the house without the grandmother, and the grandmother was required to be home with Mason at all times when K.P. was there. K.P. also could not bring any romantic partners or significant others to the house. The court imposed these requirements to mitigate the significant risk to Mason if he were left alone with K.P. There is no contradiction in the court's orders.

K.P. also maintains that the court erred in finding that there were no reasonable means by which Mason's physical health could be protected without removal. (See § 361, subd. (c)(1); *In re James T.* (1987) 190 Cal.App.3d 58, 65.) "Although the court must consider alternatives to removal, it has broad discretion in making a dispositional order." (*In re Cole C., supra*, 174 Cal.App.4th at p. 918.) K.P. relies first on the MPO. However, as discussed *ante*, the MPO was insufficient to secure Mason's safety given K.P.'s own domestic violence issues, the potential violations of the MPO already documented, and the lack of evidence that K.P. would not resume her relationship with Greg. K.P. also argues that "the commitment from the maternal grandmother to keep an eye on the household" was sufficient to protect Mason. Given the significant risk to Mason from K.P.'s domestic violence issues, K.P. has not shown that this alternative

11

would be sufficient.  Similarly, K.P.'s suggestion that she simply be given family maintenance services along with unspecified "strict Agency supervision" does not address the substantial risks to Mason from remaining in K.P.'s care.  Contrary to K.P.'s contention that the juvenile court did not consider these alternatives, they were suggested by K.P.'s counsel during the disposition hearing.  Substantial evidence supports the court's finding that these alternatives were inadequate.

## DISPOSITION

The order is affirmed.

NARES, J.

WE CONCUR:

BENKE, Acting P. J.

McDONALD, J.

12