Filed 1/16/15  In re David F. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re DAVID F., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, Plaintiff and Respondent, v. JOHN F., Defendant and Appellant. | F069641 (Super. Ct. No. 516988) **OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from orders of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

John P. Doering, County Counsel, and Carrie M. Stephens, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

[*]    Before Kane, Acting P.J., Peña, J. and Smith, J.

John F. appeals from the juvenile court's dispositional order removing his infant son, David, from his custody. (Welf. & Inst. Code, § 361.)[1] John contends the evidence does not support the court's findings that the Stanislaus County Community Services Agency made "reasonable efforts" to prevent David's removal and that there were no "reasonable means" to protect David other than removing him from John's custody. We affirm.

## PROCEDURAL AND FACTUAL SUMMARY

In March 2014, the Stanislaus County Community Services Agency (agency) received a report that Sabrina, John's girlfriend, gave birth to David and that Sabrina tested positive for methamphetamine. David did not test positive for any illicit substances. The reporter informed the agency that Sabrina had four other children who were not in her custody, she was homeless, and that she was not bonding with David.

Angela Kelley, the emergency response social worker, conducted a background search of John and Sabrina. Kelley learned that Sabrina had four children ranging in age from four to 12 years of age. Sabrina received voluntary family maintenance services for approximately six months in 2008, but left the family and did not complete the services. The children's father moved out of the county with the children. Kelley also learned that Sabrina was on probation for petty theft and that John had multiple active probation cases and was released approximately a week before David's birth after serving a six-month jail term.

On March 3, 2014, Kelley interviewed John and Sabrina at the hospital. Sabrina denied having substance abuse problems and said her petty theft charge was the result of stealing a shirt. John said his criminal activity was not as serious as it had been in the past. Kelley expressed concern that John and Sabrina were not bonding with David and they did not have stable housing. They offered no explanation for not visiting or feeding

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

David but John said that his mother agreed to let them live with her. John's mother denied this. John said they could probably stay with a friend and asked if they could stay in a motel. Kelley told him it was probably not going to be appropriate and said she would follow up with them the next day. She gave them a list of layette items they would need for the baby. She drug tested John and he tested negative.

The following day, Kelley took David into protective custody and filed a dependency petition on his behalf under section 300, subdivision (b) (failure to protect), after John and Sabrina had not arranged for housing and had only obtained a car seat. The petition alleged nine counts, including two counts alleging John's multiple arrests and active probation cases placed David at a substantial risk of neglect.

In March 2014, the juvenile court ordered David detained pursuant to the petition and set the jurisdictional hearing for the first of April. The agency placed David with his paternal grandmother and provided John and Sabrina referrals for parenting classes, individual counseling, and substance abuse assessments.

In April 2014, the juvenile court continued the jurisdictional hearing until the end of April, combined it with the dispositional hearing, and set it as a contested hearing. In its report for the combined hearing, the agency reported that John was incarcerated and, according to his mother, had a history of being in and out of custody. In addition, he had not obtained housing or any layette items for David, and he and Sabrina had not participated in any of the services offered to them. Under the "Reasonable Efforts" section of its report, the agency identified the referrals given to John and Sabrina and stated they had not followed through on their referrals. The agency did not consider John and Sabrina viable resources for David and recommended the court sustain the petition, remove David from their custody, and offer them reunification services.

In April 2014, John appeared at the contested hearing and his attorney made an offer of proof that from July through December 2013, John completed a parenting program, relationship classes, and Celebrate Recovery while he was incarcerated. He

also completed a drug treatment program twice during that same time period. He was incarcerated for receiving stolen property and expected to be released in October 2014 or sooner. In addition, he visited David three times in the hospital and he and Sabrina had diapers, a car seat, and other layette items for David. The court accepted John's offer of proof. Sabrina did not personally appear and her attorney said he had not heard from her since the detention hearing. The court noted that a bench warrant had been issued for her arrest. Sabrina's attorney made an offer of proof that she would deny the allegations in the petition. The court accepted her offer of proof and no other evidence was presented.

John's attorney (counsel) argued the agency failed to prove that John posed a risk of harm to David, noting there was no evidence John used drugs after his release from jail. Counsel also argued that the agency failed to make reasonable efforts to prevent removing David from John's custody such as providing John referrals for housing. In addition, counsel argued John had a right to make appropriate placement of David while he was incarcerated. Counsel asked the court to dismiss the petition and allow David to remain with his paternal grandmother.

County counsel argued that dismissing the petition would allow John or Sabrina to take custody of David from his paternal grandmother without ever demonstrating that they could safely parent him.

At the conclusion of the hearing, the juvenile court sustained the petition without modification and adjudged David a dependent child. The court also found that the agency made reasonable efforts to prevent removing David and there were no reasonable means to protect him without removing him from John and Sabrina's custody. The court ordered David removed from parental custody, ordered reunification services for John and Sabrina, and set a six-month review hearing.

This appeal ensued.[2]

---

[2] Sabrina did not file an appeal.

4

**DISCUSSION**

John contends the juvenile court erred in removing David from his custody because there was no evidence the agency made reasonable efforts to prevent David's removal. Specifically, he argues Kelley should have given him a referral for housing instead of expecting him to find a home on his own in 24 hours. John also contends the juvenile court's removal order was error because there was an alternative to removal; i.e. dismissing the petition and placing him in legal guardianship with his paternal grandmother.

In order to address John's claims of error, we must clarify the term "removal" in the dependency context and how we will construe John's contention on appeal in light of how he set forth his argument.

*"Removal"*

The word "removal" is often used to describe the physical taking of a child from parental custody pursuant to a protective custody warrant. In actuality, that "removal" involves law enforcement and the agency taking temporary custody of the child because law enforcement has determined that the child's circumstances may bring the child within the juvenile court's jurisdiction under section 300. (§ 305.) To be accurate, the physical removal should be referred to as "taking the child into protective custody." Before taking the child, the agency must consider whether there are services available to the parent that would eliminate the need to physically remove the child from the home. If the agency removes the child, it must file a section 300 petition within 48 hours, excluding nonjudicial days, or release the child to parental custody. (§ 313, subd. (a).) If the agency files a petition, the juvenile court must conduct a detention hearing no later than the next judicial day following the filing of the petition. (§ 315.)

At the detention hearing, the juvenile court determines whether the petition sets forth a prima facie showing that there is a need for continued detention. (§ 319, subd. (b).) Section 319 governs the detention hearing and requires the juvenile court to

determine whether "reasonable efforts" were made to prevent or eliminate the need for physical removal of the child from the home and whether there were "reasonable means" other than removal to protect the child. (§ 319, subds. (b)(1) & (d)(1).) If the court determines that continued out-of-home custody is warranted, the court orders the child "detained." (§ 319, subd. (e).)

Once the juvenile court determines that the child is described under section 300, it may issue an order at the dispositional hearing removing the child from parental custody into the care and custody of the supervising agency pursuant to section 361, subdivision (c). (§ 361.2, subd. (e).) Prior to doing so, the juvenile court must determine whether "reasonable efforts" were made to prevent the child's removal and whether there were alternative means to prevent it. (§ 361, subds. (c)(1) & (d).)

In arguing that the agency failed to make reasonable efforts to prevent removal, John faults the agency for removing David from his custody at the hospital simply because John was unable to obtain housing by the next day. He contends the agency should have provided him a referral for housing and its failure to do so was a failure to make reasonable efforts to prevent David's removal. John does not, however, argue that the juvenile court erred in detaining David in protective custody at the detention hearing or develop an argument under section 319, the detention statute. Rather, he contends the juvenile court's removal of David was error under section 361, the statute governing the dispositional order removing a child from parental custody. In addition, John cites *In re Ashly F*. (2014) 225 Cal.App.4th 803 (*Ashly F*.) in which the appellate court concluded there was insufficient evidence to support the juvenile court's removal order under section 361, subdivision (c)(1) and reversed. We thus construe John's "reasonable efforts" argument as pertaining to the juvenile court's application of section 361 rather than section 319. To the extent John sought to challenge the court's "reasonable efforts" finding under section 319, we conclude he abandoned that argument for failure to develop it. (*Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1119.)

6

*Section 361*

A juvenile court cannot remove a child from parental custody without first finding the supervising agency made reasonable efforts to prevent the child's removal and there were no reasonable means short of removal to protect the child. Section 361, the governing statute, provides in relevant part:

> "(c)(1) A dependent child may not be taken from the physical custody of his or her parents ... with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence ... : [¶] ... [that there] is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's ... physical custody. [¶] … [¶]

> "(d) The court shall make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home .… The court shall state the facts on which the decision to remove the minor is based."

"On appeal from a dispositional order removing a child from a parent we apply the substantial evidence standard of review, keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence." (*Ashly F.*, *supra*, 225 Cal.App.4th at p. 809.)

*"Reasonable Efforts" and Ashly F.*

John contends the agency failed to make reasonable efforts to prevent David's removal. He likens the facts in this case to those in *Ashly F.*, *supra*, 225 Cal.App.4th 803, in which the appellate court reversed the dispositional order for lack of substantial evidence because the record included no discussion of reasonable efforts to avoid the removal of two children from their parents. (*Id.* at p. 809.) In our view, *Ashly F.* is not even remotely similar to this case.

In *Ashly F.*, a mother physically abused her children. The Los Angeles County Department of Children and Family Services (DCFS) took them into protective custody

7

and the juvenile court exercised its dependency jurisdiction and ordered them removed from both parents. In its reports for the detention and dispositional hearings, the DCFS stated, without citing any evidence, that it made "reasonable efforts" to prevent the children's removal and there were no "reasonable means" to protect them short of removal. By the dispositional hearing, the mother had admitted her misconduct, completed services, and moved out of the home. The juvenile court ordered the children removed without inquiring what services or alternatives the DCFS considered and rejected before recommending the children's removal. (*Ashly F.*, *supra*, 225 Cal.App.4th at pp. 805-808.) In reversing, the appellate court concluded the DCFS's assertions that it made "reasonable efforts" and there were no "alternative means" were "perfunctory," the juvenile court simply repeated the DCFS's assertions and that there were reasonable alternatives to removal, including having the mother remain out of the home. (*Id.* at pp. 809-810.)

In this case, there was no option *but* to remove David from John's custody. John and Sabrina were homeless, John was incarcerated, and Sabrina's whereabouts were unknown. In addition, they had significant problems to overcome before David would be safe in their custody and they had not even begun to utilize the services offered to them. Unlike the DCFS in *Ashly F.*, this agency identified the efforts it made to prevent David's removal (i.e., the services offered) and the instant juvenile court considered that evidence and stated its reasoning for ordering David removed.

We conclude substantial evidence supports the juvenile court's finding that the agency made reasonable efforts to prevent David's removal.

### Guardianship as an Alternative to Removal

John contends an alternative to removing David from his custody was to declare the paternal grandmother David's guardian, dismiss the petition, and place him with her. While the juvenile court may appoint a legal guardian for a child at the dispositional hearing, John fails to show how that was an option in this case.

8

Section 360 allows the juvenile court to appoint a legal guardian if it determines legal guardianship is in the best interest of the child. (§ 360, subd. (a).) However, there are prerequisites for doing so, which John does not address. For example, the legal guardian must be assessed and the parents must forgo reunification services. (*Ibid*.) There is no evidence the paternal grandmother was interested in or had been assessed for legal guardianship or that John and Sabrina were willing to relinquish their right to family reunification services. Consequently, contrary to John's contention, it was not an alternative to removing David.

We conclude substantial evidence supports the juvenile court's order removing David from John's custody and affirm.

## DISPOSITION

The judgment is affirmed.