Filed 4/28/21  In re T.R. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re T.R., a Person Coming Under the Juvenile Court Law. | B308203 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>M.J.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 20LJJP00273A) |

APPEAL from orders of the Superior Court of Los Angeles County, Steven E. Ipson, Juvenile Court Referee.  Affirmed.

Linda B. Puertas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

_____

Mother M.J. appeals the juvenile court's dispositional order removing her infant daughter, T.R., from her custody due to domestic violence with father, T.R., Sr. Mother contends no substantial evidence supports the finding that T.R. was in substantial danger, or that there were no reasonable means to protect her other than removal. We affirm.

**BACKGROUND**

This family came to the attention of the Los Angeles County Department of Children and Family Services (Department) in April 2020, following a March 2020 report of domestic violence between mother and father. At the time of the incident, T.R. was only three months old.

Mother is a nonminor dependent who has an open supportive transition services case with the Department. Mother told her transition services social worker that father had punched her in the jaw as she was driving. Maternal grandmother and T.R. were also in the car.

Mother had been living with father at the time of the incident but was now staying with maternal grandmother. Mother told the reporting party she already had an active restraining order against father, because of a May 2019 incident where father had kicked and shattered the driver's window of mother's car while she was inside. Mother was pregnant with T.R. at the time.

The police report from the May 2019 incident noted that mother drove immediately to the sheriff's station to report the incident. Father was being prosecuted for vandalism, and a criminal protective order had been issued in that case in February 2020.

Mother also told the reporting party that father had grabbed her by both arms in August 2019, causing injuries. (The reporting party told the Department the restraining order stemmed from the August 2019 incident, but it appears it was issued in the pending vandalism case.)

When the Department interviewed mother on April 8, 2020, she denied T.R. was in the car at the time of the incident, claiming she, maternal grandmother and father were driving to paternal grandmother's house to pick up T.R. Father was jealous because he believed mother was seeing another man. Mother reported she was also to blame for the incident, because she pushed father in the face before he punched her. Mother told the social worker "you can't keep hitting a man and not get punched." Mother insisted the domestic violence between her and father was "mutual combat."

Before the referral incident, mother was living with father at paternal grandmother's house. Mother now lived with maternal grandmother, had not had any contact with father or paternal relatives, and denied knowing father's address or contact information. Mother was aware of the restraining order, and said she intended to resume her relationship with father once the restraining order expired.

Regarding father's open criminal case, mother was upset he was being prosecuted and did not want to press charges. She regretted calling police to report the incident. She blamed the judge and district attorney for the restraining order.

Mother and father had been in a relationship for two years, and father has a child from another relationship. Father has anger issues, and mother believed they could both benefit from anger management classes.

Mother admitted that she vented to her transition services social worker about her relationship problems and believed it was the social worker who had made the report to the Department. She "now knows not to talk to the social worker about anything."

Mother denied any other domestic violence besides the March 2020 referral incident and the May 2019 incident.

According to mother's transition services social worker, mother had been living with father since August 2019, following the vandalism. Mother told the social worker about the most recent domestic violence incident, and the social worker was concerned because father has a history of domestic violence with the mother of his other child. The social worker was also concerned about mother's current living situation, reporting that maternal grandmother suffers from "severe mental health issues." The social worker told mother she may not leave T.R. alone with maternal grandmother.

A law enforcement call log for maternal grandmother's home disclosed that deputy sheriffs had been dispatched to the home on August 17, 2019, after mother called to report that she and father had been involved in an argument. Maternal grandmother told responding deputies that the argument had only been verbal, and mother and father were no longer there when deputies arrived.

The Department spoke with D.L., the mother of father's other child. She reported that she has an active restraining order protecting her and her son from father, and that father has suffered with anger issues since high school. She was on good terms with mother and reported that domestic violence between mother and father happened "all the time."

4

Court records revealed that D.L.'s restraining order was issued in May 2019, and D.L. had been awarded sole legal and physical custody of her child with father, because of "multiple acts of domestic violence" perpetrated by father. Moreover, there was a prior referral to the Department, reporting that father had punched D.L. in the face in front of their child. The referral was closed after D.L. obtained the protective order.

Father called the Department on April 21, 2020. He reported that he and mother were not together at that time, but planned to resume their relationship once they were able to "get everything together." Father denied domestic violence with mother or D.L. He said mother hit him, but denied that he hit her back. Father admitted to remaining in regular contact with mother.

T.R. was removed from mother and father. At the detention hearing, the juvenile court found father to be T.R.'s presumed father.

In a July 2020 interview with the Department, mother reported she was no longer in a relationship with father, and that she was abiding by the restraining order. Mother admitted she and father had broken up before, after the May 2019 incident, but resumed their relationship a short time later. However, mother then understood that their relationship was not healthy. Mother told the social worker she moved out of paternal grandmother's home as soon as she learned the restraining order had been issued. She admitted that father hit her first during their March 2020 fight, and that she contacted her transition services social worker immediately to report the incident. Mother did not understand why T.R. was removed because "[she] did what [she]

5

was supposed to do." Mother admitted she and father often argued, and called each other names.

T.R. was placed with paternal aunt. On July 13, 2020, paternal aunt reported she heard from family members that mother and father were having contact with each other and were still in a relationship. They were also recently seen together at a medical marijuana dispensary. She was willing to adopt T.R. if mother and father failed to reunify with her.

Mother's transition services social worker reported she had not heard or seen anything indicating that mother or father were still seeing each other. She believed mother to be "open and honest" and "moving in a positive direction."

Mother reported she was working so she can provide for T.R. She denied any past or current use of substances, other than trying marijuana once as a teenager. She was participating in domestic violence and parenting programs. The parenting program reported that mother was proactive and took initiative, and she was dedicated to becoming a better parent.

In the jurisdiction/disposition report, the Department noted mother had made progress but was unable to articulate why domestic violence is harmful to T.R. The Department was concerned about allegations that mother and father continued to have contact in violation of the restraining order. Regarding "reasonable efforts" to avoid removal, the Department listed monthly home calls and child safety assessments; referrals to community resources; CFT; and MAT assessment. The Department recommended that T.R. be removed from mother and father.

A last-minute information for the court reported that mother tested positive for marijuana on July 15, 2020. When

confronted with her positive drug test, mother admitted she smoked marijuana occasionally but denied that she used marijuana when T.R. was in her care.  Mother had completed four domestic violence classes, and had 12 more to complete the program.  The domestic violence program reported that mother was eager to learn, showed insight, and appeared to understand the impact domestic violence has on children.  The facilitator of the program had no concerns about mother.

Father was no longer in contact with the Department.

At the August 13, 2020 combined jurisdiction/disposition hearing, mother testified there were only two domestic violence incidents with father; the vandalism and the incident leading to the referral in this case.  Mother and father argued, but their arguments did not become physical.  Regarding the August 17, 2019 incident where police were called to maternal grandmother's home, mother testified maternal grandmother had called police because of an argument between mother and maternal grandmother.

Mother testified she did not learn about the restraining order until she moved in with maternal grandmother, following the most recent domestic violence incident.  When mother reported the most recent domestic violence incident to her social worker, she had said maternal grandmother was present but in fact, T.R. was being watched by paternal grandmother at the time.  Mother did not intend to resume her relationship with father, and last saw him when she moved out of paternal grandmother's home.

Paternal aunt testified she had not seen mother and father together after T.R. was placed in her care but she had heard they were seeing each other.  Mother had recently told paternal aunt

that she was pregnant with father's baby. Paternal aunt denied witnessing any domestic violence between mother and father.

Mother admitted she had been pregnant recently but denied she got pregnant with father.

Mother's counsel argued against removal, reasoning that mother had an open supportive transition case and additional services could be put in place to protect T.R.

The juvenile court sustained allegations under Welfare and Institutions Code section 300, subdivision (b) that mother and father's history of domestic violence and mother's failure to protect placed T.R. at risk of harm. The court also found it was necessary to remove T.R. from mother and father, and there were no reasonable means to protect T.R. without removing her. The court had doubts about mother's credibility, and found paternal aunt's testimony that mother admitted to being pregnant by father to be credible. The court acknowledged that mother had made progress but did not think it was safe to return T.R. at that time.

Mother timely appealed.

## DISCUSSION

Mother does not challenge the juvenile court's jurisdictional order, and there is no dispute exposing a child to domestic violence is a sufficient basis for the juvenile court to assert jurisdiction. (*In re T.V.* (2013) 217 Cal.App.4th 126, 134; *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599–601.)

Mother contends there was insufficient evidence T.R. was at substantial risk of harm if she was returned to mother because mother responded appropriately by promptly reporting the domestic violence incidents between her and father. We are not persuaded.

8

Removal is proper if the juvenile court finds by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (Welf. & Inst. Code, § 361, subd. (c)(1).) We review the dispositional order for substantial evidence, keeping in mind the trial court had to find clear and convincing evidence supporting removal. (*In re V.L.* (2020) 54 Cal.App.5th 147, 155.) We must decide " 'whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true.' " (*Ibid.*)

We find such evidence here. First, the sustained jurisdictional findings are prima facie evidence that T.R. was unsafe with mother. (See *In re T.V., supra,* 217 Cal.App.4th at p. 135 ["The jurisdictional findings are prima facie evidence the minor cannot safely remain in the home."].) Also, there was ample evidence that mother and father had violated the protective order issued in his vandalism case, and that mother later tried to conceal her knowledge of the order. In her first interviews with the Department, mother admitted she was aware of the order at the time of the referral incident, and had been residing with father nonetheless. Mother later inconsistently testified that she was not aware of the order until after the incident, when she moved out of paternal grandmother's home.

Although mother claimed she was no longer involved with father, and was abiding by the court order, there was evidence that mother had become pregnant again by father. Mother also

9

expressed regret about reporting both incidents to law enforcement and her social worker, and said she intended to resume her relationship with father.  Mother had left father before, only to go back to him.  Although mother had made progress with her services and was beginning to understand that her relationship with father was unhealthy, the record contained ample evidence supporting T.R.'s removal.

Mother also contends the Department's reports, and the juvenile court's findings, did not establish there were no reasonable means to protect T.R. other than removal.

"Before the court may order a child physically removed from his or her parent's custody, it must find, by clear and convincing evidence, the child would be at substantial risk of harm if returned home and there are no reasonable means by which the child can be protected without removal."  (*In re T.V.*, *supra*, 217 Cal.App.4th at p. 135; see also Welf. & Inst. Code, § 361, subd. (c)(1).)  The Department's report must discuss "the reasonable efforts made to prevent or eliminate removal" (Cal. Rules of Court, rule 5.690(a)(1)(B)(i); *In re Ashly F.* (2014) 225 Cal.App.4th 803, 809), and the court "shall state the facts on which the decision to remove the minor is based" (§ 361, subd. (e); *Ashly F.*, at p. 810, quoting former § 361, subd. (d)).  When the court does not state the factual basis for an order, we may infer the basis from the evidence.  (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1218–1219.)

The Department's reports adequately discuss the reasonable efforts made to prevent removal, and the evidence discussed *ante* plainly supports the juvenile court's order.

10

**DISPOSITION**

The dispositional orders are affirmed.


GRIMES, J.

WE CONCUR:


BIGELOW, P. J.


STRATTON, J.