Filed 1/15/21  In re Wynston P. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re WYNSTON P., a Person Coming Under the Juvenile Court Law. | B305492 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>WILLIS P.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 20CCJP00382A) |

APPEAL from an order of the Superior Court of Los Angeles County.  Jean M. Nelson, Judge.  Affirmed.

Lori E. Kantor, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

————————————————

Willis P. (Father) appeals a juvenile court order removing his child, Wynston P., from his custody following an incident in which he punched the child's mother, Felicia S. (Mother), in the face because she refused to give him her phone. Out of fear for her safety and to escape Father, Mother then jumped off the second floor balcony of their apartment. As of the disposition hearing, Father denied using violence against Mother, and he claimed not to have anger management issues. On appeal, he contends there is insufficient evidence supporting the juvenile court's removal order. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 3, 2019, Mother called the police following a domestic violence incident with Father. According to the police report, Mother said she and Father had an argument while Father was holding their one-year-old child, Wynston. Mother opened the front door to leave, but Father shut it. Mother demanded Father get out of her way, and he punched her in the face. Mother ran onto the balcony of the second story apartment, which was about 10 to 15 feet above the ground. Father followed after Mother while still holding Wynston, and Mother jumped to the ground to escape him. Mother suffered redness and swelling near her eye, and she had an abrasion on her left knee from jumping off the balcony.

During the ensuing investigation by the Los Angeles County Department of Children and Family Services (DCFS), Mother denied that Father had struck her or that she tried to escape from him. She claimed she threw her phone off the balcony after Father demanded to see it, and she went to retrieve it before Father could. Mother nonetheless agreed to follow a DCFS safety plan whereby she would live apart from Father.

2

Mother also said she was open to participating in domestic violence classes and counseling.

DCFS contacted Father by telephone about a week after the incident. Father indicated he was willing to meet with a social worker in person, but he did not answer or return DCFS's follow-up phone calls. Father eventually agreed to meet with a DCFS social worker in mid-February 2020, more than two months after the incident. At the meeting, Father denied any violent, verbal, or physical altercations between him and Mother. He provided DCFS a record showing he had enrolled in a domestic violence class.

Based on the domestic violence incident, DCFS filed a petition asserting Wynston is a person described by Welfare and Institutions Code section 300, subdivisions (a) and (b).[1] The juvenile court subsequently ordered Wynston detained from Father and placed with Mother under the supervision of DCFS.

The court held a combined jurisdiction and disposition hearing on March 9, 2020. Father testified that he did not punch Mother or prevent her from leaving the home. According to Father, he asked Mother to show him her phone after he heard her whispering into it. Mother refused and threw the phone off the balcony. As Father started to open the front door to leave, he saw Mother hanging off the balcony. Father left the home before he knew the police had been called.

Father testified that he had been participating in counseling and a parenting class for three weeks. He had also completed an anger management class in connection with his parole for a robbery conviction. Father denied having anger

---

[1]    All further undesignated statutory references are to the Welfare and Institutions Code.

3

management issues, and he could not identify any triggers for his anger. Father also claimed he and Mother never argue.

The court sustained the petition and then turned to disposition. Wynston's counsel and DCFS asked the court to remove the child from Father and keep him placed with Mother. Father's counsel suggested removal was not necessary because the parents could reside in separate homes and exchange Wynston at a neutral location.

The court removed Wynston from Father's custody after finding clear and convincing evidence of a substantial danger to his physical health, safety, protection, or well-being if returned to Father's home. The court also found there were no reasonable means by which Wynston's physical health could be protected without removing him from Father's custody, and DCFS had made reasonable efforts to prevent or eliminate the need for removal and no services were available to prevent removal. The court declined to remove Wynston from Mother's custody.

Father timely appealed.

## DISCUSSION

Father contends there is insufficient evidence to support the juvenile court's removal order. We disagree.

Under section 361, subdivision (c)(1), "[a] dependent child may not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence . . . [t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's

4

parent's . . . physical custody." Before removing a child from a parent, the juvenile court must also determine "whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home . . . ." (§ 361, subd. (e).)

"'A removal order is proper if based on proof of a parental inability to provide proper care for the child and proof of a potential detriment to the child if he or she remains with the parent. [Citation.] "The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." [Citation.] The court may consider a parent's past conduct as well as present circumstances.' [Citation.]" (*In re A.S.* (2011) 202 Cal.App.4th 237, 247, disapproved of on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1003, fn. 4.)

"On appeal from a dispositional order removing a child from a parent we apply the substantial evidence standard of review, keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence. [Citation.]" (*In re Ashly F.* (2014) 225 Cal.App.4th 803, 809 (*Ashly F.*).)

Here, there is substantial evidence supporting the juvenile court's removal order. The record shows that, while holding Wynston, Father punched Mother in the face because she refused to give him her phone. Mother was apparently so frightened by Father that she jumped from a second-story balcony to escape him. As Father readily admits, the incident clearly endangered Wynston's physical health, safety, and well-being.

The evidence further indicates Father's issues that led to the domestic violence incident remained unresolved as of the

5

disposition hearing.  Father, for example, continued to deny ever using violence against Mother, and he claimed not to have anger issues or triggers for his anger.  Father even made the preposterous assertion that he and Mother never argue. Although Father was attending counseling and parenting classes, and had completed an anger management course in connection with his parole, his participation in services clearly had not yet led to meaningful insights.  The juvenile court could have reasonably concluded Father's unresolved issues with anger and violence would pose a risk to Wynston's physical safety and well-being absent removal, especially considering the child's tender age and the severity of the prior domestic violence incident. (See *In re T.V.* (2013) 217 Cal.App.4th 126, 133 ["A parent's past conduct is a good predictor of future behavior."]; *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge."].)

Father insists the removal order must be reversed because DCFS failed to properly document in the disposition report the reasonable efforts it undertook to prevent removal, as required by rule 5.690(a)(1)(B)(i) of the California Rules of Court.[2]  We agree with Father that DCFS did a poor job of documenting its reasonable efforts.  Although it included a section in the disposition report purporting to identify the steps it took to prevent removal, the listed efforts are either irrelevant or so vague as to be essentially meaningless.  Among other things, for example, DCFS identified that it had "interviewed all family members," completed an investigation, referred Mother to

---

[2]     California Rules of Court, rule 5.690(a)(1)(B)(i) requires DCFS to include in its social study a "discussion of the reasonable efforts made to prevent or eliminate removal . . . ."

services, and completed a "staffing." It is not clear, and DCFS did not explain, how any of those efforts might have prevented or eliminated removal from Father.

Nonetheless, reversal is not required because, despite DCFS's failings, there is substantial evidence in the record from which the juvenile court could conclude DCFS made reasonable efforts to prevent removal. The detention report, for example, indicates that DCFS proposed and implemented a safety plan whereby Mother and Father would live in separate homes, which is essentially what Father's counsel suggested at the disposition hearing as an alternative to removal. DCFS also ensured that Father had enrolled in classes that would address the issues raised in the petition. In addition, the disposition report indicates that DCFS considered, but ultimately rejected, a voluntary program of supervision pursuant to section 301. This provided a sufficient factual basis for the juvenile court to conclude that DCFS made reasonable efforts to prevent removal.

We disagree with Father's passing suggestion that DCFS's efforts were insufficient because it failed to offer him referrals for services. The record indicates that Father refused to meaningfully cooperate with DCFS until mid-February 2020, which was only a few weeks before the disposition hearing. By then, Father had already enrolled in a domestic violence class, and he fails to identify any additional referrals that were required.

Father next contends there is insufficient evidence supporting the juvenile court's finding that no reasonable means existed to prevent removal. He insists the court could have avoided removal by ordering the parents to live apart, not share custodial time, and cooperate with DCFS until their domestic

7

violence issues were resolved. In advancing this argument, Father simply ignores evidence showing he previously refused to cooperate with DCFS. He also overlooks that, in light of his refusal to acknowledge his serious issues with anger and violence—even after participating in services—the juvenile court could have reasonably found the same issues are likely to manifest while he is living apart from Mother. Under these circumstances, the juvenile court could have reasonably concluded Father's proposal would not sufficiently protect Wynston's safety.

In a related argument, Father suggests it was unreasonable for the court to remove Wynston from him, but not from Mother, since she too was in denial about the domestic violence. Once again, we disagree. As noted above, the juvenile court could have reasonably found Father's unresolved issues with anger and violence are likely to manifest even outside Mother's presence. There is no evidence that Mother has similar unresolved issues that would manifest outside Father's presence. On this record, the court could have reasonably concluded it was necessary to remove Wynston from Father, but not from Mother.

Father further suggests the court should have considered other means to prevent removal, such as implementing unannounced visits, public health nursing services, and in-home counseling services. He fails, however, to explain how such means would have ameliorated the risks posed by his unresolved anger and violence issues, which were the basis for the court's decision to remove Wynston from his custody.

Father next claims the juvenile court failed to comply with section 361, subdivision (e), which requires it "state the facts on which the decision to remove the minor is based." His claim is

not supported by the record. At the disposition hearing, the court explained its removal order was based on the facts found true in the petition as well as the "domestic violence that needs to be addressed, and until it is, [Father] remains a risk to the child. He was the perpetrator here, and until he addresses the domestic violence in a relationship, that risk continues. [¶] So I find that continuance in the home of [Father] is contrary to the child's welfare." To the extent the court erred in failing to specify the facts on which it relied in making its reasonable efforts and reasonable means findings, any error was harmless given the substantial evidence supporting those findings, as discussed above. (See *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1218–1219.)

*Ashly F., supra,* 225 Cal.App.4th 803, does not suggest a different result. In that case, the appellate court reversed an order removing children from their parents' custody where DCFS failed to document its reasonable efforts to prevent or eliminate removal, or any alternatives to removal that it had considered but rejected. The juvenile court, moreover, did not state facts on which the decision to remove the children was based or consider reasonable means to protect the children absent removal, despite "ample evidence" in the record showing the existence of such reasonable means. (*Id*. at p. 810.)

Here, in contrast, DCFS documented that it had considered, but rejected, a voluntary program of supervision, and the record shows it made reasonable efforts to prevent removal, including by implementing a safety plan and ensuring Father had enrolled in services. Moreover, unlike in *Ashly F*., the juvenile court stated the facts on which its removal decision was

9

based, and there is not "ample evidence" of reasonable means to protect Wynston without removing him from Father's custody.

Father's reliance on Justice Menetrez's dissenting opinion in *In re G.C.* (2020) 48 Cal.App.5th 257, is also misplaced. In concluding there was insufficient evidence to support removal in that case, Justice Menetrez noted the record showed all the immediate risks to the children had been addressed as of the disposition hearing.  (*Id*. at p. 273.)  Here, in contrast, Father did not even acknowledge the violent incident that endangered Wynston's safety, let alone address the underlying issues that led to it.  The risk to Wynston, therefore, had not been resolved as of the disposition hearing.

## DISPOSITION

The removal order is affirmed.


                                            BIGELOW, P. J.
We Concur:



            GRIMES, J.



            WILEY, J.