Filed 5/24/23  In re Ta.C. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re Ta.C., a Person Coming Under the Juvenile Court Law. | B320451 (Los Angeles County Super. Ct. No. 22CCJP00570) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. T.C., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel Zeke Zeidler, Judge.  Affirmed.

Sarah Vaona, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

T.C. (Father) appeals from the juvenile court's assumption of jurisdiction over his infant son Ta.C. based in part on findings related to Father's marijuana use, as well as the court's related dispositional order removing Ta. from Father's custody. Father contends that substantial evidence does not support the juvenile court's jurisdictional and dispositional findings. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying proceedings involving Ta. included allegations against Ta.'s mother K.K. (Mother) and against Father beyond those relating to Father's drug use. Because this appeal involves only Father's challenges to findings concerning his alleged drug use,[1] we limit our recitation of the underlying facts and procedural history accordingly.

A. **Dependency Proceedings Involving Father's Other Children**

Before Ta.'s birth, Father was involved in dependency proceedings involving Ta.'s half-siblings, O.C. (born March 2005)

_____

[1] Mother also appealed from the jurisdiction and dispositional order, and her appointed counsel filed a brief pursuant to *In re Phoenix H*. (2009) 47 Cal.4th 835. The appeal was dismissed on March 7, 2023, after Mother failed to personally submit any appellate contentions for court consideration.

and B.C. (born February 2008).  Neither of those other dependency matters involve assertions about Father's alleged substance abuse.  In 2016, the juvenile court sustained a Welfare and Institutions Code[2] section 300 petition alleging Father's mental health issues placed B.C. at risk of harm.  The juvenile court subsequently terminated Father's family reunification services and ordered a permanent plan of legal guardianship. The guardianship was later dissolved, and the juvenile court reinstated jurisdiction over B.C. in September 2021.

In January 2022, DCFS filed a section 300 petition on behalf of O.C. alleging that the child's mother emotionally abused the child, that O.C.'s mother failed to provide the child with necessary mental health services, and that the mother's male companion engaged in frequent verbal arguments with the child. The petition was later amended to allege Father's history of mental and emotional problems endangered O.C. and posed a substantial risk of harm to the child.

## B.    Ta. Is Born and Tests Positive for Marijuana

Ta. was born in January 2022.  After his birth, Ta. was placed in the neonatal intensive care unit with respiratory distress.  DCFS received a referral indicating Mother had a long history of methamphetamine use, and that Mother's other children had been removed from her care and her parental rights terminated.  Toxicology screens for Mother and Ta. were both negative for drugs.  A meconium screening for Ta., however, was positive for marijuana.

---

[2] All unspecified statutory references are to the Welfare and Institutions Code.

3

When speaking to a DCFS social worker, Mother asked DCFS to consider releasing Ta. to Father.  Father told DCFS he was currently homeless but was in the process of securing housing.  Father reported that if Ta. was detained from Mother, he wanted the child returned to his care.

Father denied any methamphetamine use; he did report occasional marijuana use and agreed to drug test.  Father tested clean on January 24, 2022.  He tested positive for marijuana on January 26, 2022, at a high level—4358 ng/ml.[3]  When Ta. was hospitalized, Mother and Father took turns visiting the child.  A hospital social worker was unaware of Father being under the influence when visiting Ta., but stated that Father smelled of marijuana during a visit on January 27, 2022.

During its investigation, DCFS received information from a family friend of Mother, who expressed concern about Ta. being returned to Mother or Father because of their respective criminal histories and the fact they were both "on the run because of drugs."  A later search showed Father had multiple prior convictions including manslaughter in 2009, inflicting corporal injury on an intimate partner in 2013, transportation of controlled substances in 2014, and possession of cocaine in 2017.  While under court supervision, Father was arrested again in

---

[3] Urine samples typically test positive for marijuana if the amount of THC in the sample is more than 50 ng/ml.  (Univ. of Rochester Medical Center, Encyclopedia <https://www.urmc.rochester.edu/encyclopedia/content.aspx?contenttypeid=167&contentid=cannabinoid_screen_urine> [as of May 19, 2023].)  Father's test was more than 85 times higher than that amount.

2017 for possession of methamphetamine, and later convicted of a parole violation in connection with that arrest.

## C.    DCFS Files a Section 300 Petition

On February 15, 2022, DCFS filed a section 300 petition on behalf of Ta. based on Mother's substance abuse (*id.*, subds. (b), (j); counts b-1, b-2, j-1, j-2), Mother's history of mental health problems (*id.*, subds. (b), (j); counts b-4, j-2), Father's substance abuse (*id.*, subd. (b); count b-3), and Father's history of mental health problems (*id.*, subds. (b), (j); counts b-5, j-3).

On February 16, 2022, Father took a drug test which was negative.

On February 18, 2022, the juvenile court found a prima facie case that Ta. was a child described by section 300 and detained him from the parents' custody.  Father was permitted monitored visitation for a minimum of four hours per week.

On March 11, 2022, a dependency investigator asked Father if he was willing to complete an on-demand drug test. Father declined, saying he had already completed several drug tests for DCFS.

In an April 2022 jurisdiction and disposition report, DCFS noted Ta. had been discharged from the hospital and was placed in the home of a foster parent.  In an interview with DCFS, Mother stated that in the six years she had been with Father, she had never seen marijuana impede him, and she was confident in his ability to parent.  Father told DCFS he was in a car accident in July 2021, and smoked medical marijuana as often as needed for chronic pain.  Father analogized his marijuana use to alcohol, telling DCFS "it's like alcohol is legal but [I] can't go to the job drunk, parenting is [a] 24[-]hour job, I haven't had the opportunity to be on the job, it's an assumption, we assume that

5

you medicate everyday and if you have the care of child I will continue. I'm not stupid[;] at the end of the day I am intelligent enough to realize cutoff time to take care of my child."

An April 2022 jurisdiction/disposition report in O.C.'s case noted Father drug tested on February 16, 2022, in connection with that case and was negative. O.C.'s mother told DCFS in March 2022 that Father had been homeless for a very long time, and sold drugs while living in the street. Father had sent O.C.'s mother a text message saying "I got good coke," which she forwarded to the DCFS investigator.

Returning to Ta.'s case, DCFS also reported to the juvenile court that Father completed a mental health assessment and did not meet the criteria for services. Father began participating in drug abuse counseling services through Skid Row Development Corporation in October 2021, remained compliant, and was scheduled to finish the program on April 7, 2022. Father also completed financial literacy and life skills courses.

DCFS also reported that it had received a referral regarding Ta. on April 20, 2022. The child had not gained any weight in the last three weeks and was admitted to the hospital to determine if there was an organic cause for the lack of weight gain. Ta. was in the hospital for a few days; he also had a history of cardiac problems including a small hole in his heart. DCFS was informed such a hole is a common issue with children, but it requires monitoring.

DCFS requested that Father drug test on April 15, 2022; Father did not comply and said he would test when it was court ordered.

## D. Jurisdiction/Disposition Hearing

On May 10, 2022, the juvenile court held the jurisdiction and disposition hearing. Father was present and represented by counsel. The court admitted into evidence various reports from DCFS and took judicial notice of the documents contained in the case files for O.C. and B.C. The court also admitted into evidence two exhibits offered by Father: an April 12, 2022, letter from the Department of Mental Health stating Father did not meet the criteria for mental health services, and a certificate that Father had completed the 90-day outpatient drug and alcohol treatment program through the Skid Row Development Corporation on April 7, 2022.

Father's counsel requested the juvenile court dismiss the substance abuse count alleged against Father, noting Father completed an outpatient program and provided several negative drug tests. Father's counsel acknowledged that Father initially continued to smoke marijuana while participating in his program, but that subsequent negative tests showed Father was receptive to services.

Ta.'s counsel argued that Father's prior drug-related convictions, his January 26, 2022 drug test for DCFS that was positive for marijuana at a very high level, and his visit with Ta. in the neonatal intensive care unit while smelling of marijuana, were sufficient to sustain the drug use count against Father. Counsel for DCFS joined in the argument of minor's counsel regarding the drug use allegation against Father.

The juvenile court sustained the section 300 petition, including multiple counts pertaining to Mother's conduct and the one count pertaining to Father's substance abuse. The court

dismissed the counts against Father related to his alleged mental health issues.

The court then proceeded to disposition, stating it would consider the same evidence and matters subject to judicial notice from the jurisdiction hearing. The court ordered Ta. removed from both parents and placed in the care of DCFS. Over DCFS's objection, DCFS was ordered to provide family reunification services to Father and Mother. Father was ordered to submit to random drug testing; if any test was positive, Father was ordered to complete a rehabilitation program with random testing and aftercare.[4] Father was granted monitored visitation for a minimum of four hours per week, with DCFS having discretion to liberalize the visits.

## DISCUSSION

### A. Father's Challenge to the Jurisdictional Allegation Involving Substance Abuse

#### 1. *Father's Appeal is Justiciable*

DCFS initially argues that Father's jurisdictional challenge is non-justiciable because of the sustained and unchallenged counts against Mother. "When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other

---

[4] If Father missed a test, the court indicated DCFS could present a walk-on request for further orders.

8

alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

Our Supreme Court recently held that when a parent "demonstrate[s] a specific legal or practical consequence that would be avoided upon reversal of" a jurisdictional finding, an appeal is not moot. (*In re D.P.* (2023) 14 Cal.5th 266, 273.) We reject DCFS's contention that the sustained drug use count against Father did not form the basis for the order removing Ta. from Father's custody and placing the child elsewhere. Instead, we agree with Father that the sustained jurisdictional allegation against him did form the basis for the dispositional order that removed Ta. from Father's custody, and restricted Father's visitation, which continues to impact Father's rights. The juvenile court ordered family reunification services for Father, instead of adopting DCFS's recommendation to bypass family services, because Father was making efforts to address his drug use. The court's dispositional orders included that Father was to submit to drug testing, with a full rehabilitation program ordered if any tests were missed or positive. Accordingly, Father's appeal is justiciable.

2. *Substantial Evidence Supports the Jurisdictional Finding Against Father*

a. *The Applicable Law*

Father contends that substantial evidence does not support the drug abuse allegation against him. In reviewing for substantial evidence, "We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence. Rather, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if other evidence supports

9

a contrary finding." (*In re James R.* (2009) 176 Cal.App.4th 129, 135.) However, " ' " ' "inferences that are the result of mere speculation or conjecture cannot support a finding." ' " ' " (*In re J.A.* (2020) 47 Cal.App.5th 1036, 1046, italics omitted.)

A child may be declared a dependent of the juvenile court if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [¶] . . . [t]he failure or inability of the child's parent . . . to adequately supervise or protect the child[, or] [¶] . . . [t]he inability of the parent . . . to provide regular care for the child due to the parent's . . . substance abuse." (§ 300, subd. (b)(1)(A) & (D).) "The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (§ 300.2, subd. (a).)

"A jurisdiction finding under section 300, subdivision (b)(1), requires [DCFS] to prove three elements: (1) the parent's . . . neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness." (*In re Cole L.* (2021) 70 Cal.App.5th 591, 601.) "Although section 300 requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing [citations], the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. [Citations.] The court may consider past events in deciding whether a child presently needs the court's protection. [Citations.] A parent's ' "[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.' [Citations.] 'To establish a defined risk of harm at

10

the time of the hearing, there "must be some reason beyond mere speculation to believe the alleged conduct will recur." ' [Citation.]"  (*Id.* at pp. 601-602.)

> b.    *Substantial Evidence Supports the Jurisdictional Finding of Substance Abuse*

Father argues there was not substantial evidence he was currently using marijuana, nor substantial evidence of a nexus between his alleged substance abuse and a substantial risk of serious physical harm to the minor child.  We disagree with both contentions.

Substantial evidence supported the inference Father was currently using marijuana.  Father had a history of narcotics use and distribution, including past convictions for drug possession and drug transportation.  Although Father had completed a 90-day treatment program, and had some negative tests, he tested positive for marijuana at a very high level on January 26, 2022, while in that treatment program—a result that the juvenile court could reasonably construe as indicating something more troubling than recreational use, and that Father had not yet internalized the lessons of the treatment program.  Father visited Ta. at the hospital the following day smelling of marijuana despite the child being in the neonatal intensive care unit with respiratory issues.  Father admitted to marijuana use related to managing chronic pain, and his interview with DCFS suggested he intended to continue using marijuana for that reason.  While we commend Father for seeking treatment and the progress demonstrated by his successful completion of the Skid Row Development program and his various negative tests, in reviewing for substantial evidence we " ' " 'ordinarily *look[ ] only at the evidence supporting the successful party, and disregard[ ]*

11

*the contrary showing.'* " ' " (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1527, disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)

There was also substantial evidence of a nexus between Father's marijuana use and a substantial risk of serious harm to the minor child. "[D]rug use or substance abuse, without more, is an insufficient ground to assert jurisdiction in dependency proceedings under section 300." (*In re L.W.* (2019) 32 Cal.App.5th 840, 849.) This, however, is not a matter involving substance abuse without more. Father tested positive for marijuana at a very high level while Ta. was in the intensive care unit, and showed up to the hospital smelling of marijuana. As the juvenile court noted, that was "kind of like . . . showing up at the hospital for a newborn strongly reeking of alcohol." Father's statements to DCFS suggested he thought he could schedule his marijuana use around his parenting duties—that he could "medicate everyday" despite caring for the child because he could impose a "cutoff time to take care" of Ta. But parenting an infant—particularly one with meaningful medical issues—does not come with a set schedule that permits such "cutoff time[s]" for intoxication. Construed as it must be in the light most favorable to the juvenile court's findings, the evidence shows "the effect of [Father's] substance abuse is not now confined to [his] private moments alone," and that there was a substantial risk Father's marijuana use would "spill[ ] over into areas that will pose a substantial risk of physical harm to" Ta. (*In re L.W., supra,* at p. 850.)

## B.     Substantial Evidence Supports the Removal Order

Before removing a child from a parent, the juvenile court must find, by clear and convincing evidence, that the child would

12

be at substantial risk of harm if returned home and there are no reasonable means by which the child can be protected without removal. (§ 361, subd. (c)(1).) Dispositional orders are reviewed for substantial evidence, "keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence." (*In re Ashly F.* (2014) 225 Cal.App.4th 803, 809.)

Father's substantial evidence arguments regarding the removal order repeat the same contentions discussed above regarding the jurisdictional finding based on substance abuse. Because we do not find those arguments persuasive, we likewise reject Father's contention that substantial evidence does not support the finding that Ta. would be at substantial risk of harm if returned to Father's care, and that there were no reasonable means to protect Ta. without removal. There was substantial evidence that Father's participation in services, while laudable, had not yet reached a level of efficacy that an infant like Ta. could be safely maintained in Father's care.

## DISPOSITION

The juvenile court's jurisdiction and disposition orders are affirmed.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

ROTHSCHILD, P. J.        CHANEY, J.

13