Filed 4/3/25  In re L.R. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re L.R., a Person Coming Under the Juvenile Court Law. | |
| SOLANO COUNTY HEALTH AND SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>S.R.,<br><br>    Defendant and Appellant. | A170204<br><br>(Solano County<br>Super. Ct. No. JD2300073) |

**MEMORANDUM OPINION**

At a contested jurisdiction/disposition hearing, the juvenile court sustained allegations that S.R. (mother) placed her newborn daughter L.R. at risk because mother, who was homeless, was unable to provide safe and stable housing, obtained no prenatal care during her pregnancy, and tested positive for amphetamines at the hospital.  The court declared L.R. a dependent (Welf. & Inst. Code, § 300, subd. (b)), removed her from mother's custody and ordered reunification services.[1]  Mother now timely appeals the

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.  We resolve this case by memorandum opinion.  (Cal. Stds.

1

disposition order, challenging both the jurisdictional findings and the determination to remove L.R. from her custody. We affirm but for a limited remand to ensure compliance with the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) due to uncontested, conceded ICWA violations.

## DISCUSSION

In October 2023, L.R. came to the attention of the Solano County Child Welfare Services (the Agency) the day she was born, through an emergency referral reporting that mother tested positive for amphetamines upon her admission to the hospital, received no prenatal care and had no provisions to support the baby. Hospital staff provided the emergency social worker a copy of a toxicology report indicating a positive result for methamphetamines ("detected"). When interviewed at the hospital, mother reported she was homeless and had received no prenatal care but denied using substances.

L.R. was ordered detained. Over the next three months, mother was given numerous referrals for substance abuse treatment, housing programs and other supportive resources. She reported using drugs since 11th grade (she was 21 when the case began), reported struggling with methamphetamine addiction since living in a homeless encampment in December 2022, and told her lead social worker she had used methamphetamine during her pregnancy, though she had tried to stop. By

---

of Jud. Admin., § 8.1.) We do not recite the full factual and procedural background because our opinion is unpublished and the parties know, or should know, "the facts of the case and its procedural history." (*People v. Garcia* (2002) 97 Cal.App.4th 847, 851 [unpublished opinion merely reviewing correctness of trial court's decision "does not merit extensive factual or legal statement"].)

2

the time of the contested jurisdiction/disposition hearing held on March 18, 2024, she had been kicked out of one residential treatment center after two days and admitted using methamphetamines the day she was discharged; and had attended a meeting with her lead social worker under the influence of drugs and incoherent and admitted she was still using. After that, the Agency provided her with additional intensive case support through the services of a family preservation social worker, Erika Henry, who was assigned to meet weekly with mother to "really handhold" her and help her engage with services. Nevertheless, by the time of the contested hearing she was not enrolled in any substance abuse treatment and had not engaged in any other referrals. In addition, several months before the hearing she claimed to have stopped using methamphetamines and had agreed to undergo voluntary drug testing, but frequently missed voluntary drug testing appointments despite being given transportation assistance and other support from the Agency to facilitate her drug testing. In light of this, the juvenile court stated it could not substantiate her claims to new sobriety.

We perceive no error in the juvenile court's decisions to declare L.R. a dependent.[2] Mother's challenge to the jurisdictional findings centers principally on her homelessness and poverty, but her drug use was also at issue.[3] As to that, she asserts there was insufficient evidence that she tested

---

[2] We presume the parties' familiarity with the substantial evidence standard of review governing our review of the court's jurisdictional findings under section 300, subdivision (b).

[3] For the first time in her reply brief she asserts that substance abuse was not pled in the petition, which she asserts was narrowly focused only on a "single, questionable positive drug test" at the hospital. But any argument that parental substance abuse generally was beyond the scope of the pleadings and thus improperly considered is undeveloped, and we decline to consider it. (See *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078 ["Mere

positive for methamphetamines at the hospital because the lab reports show she tested negative, but we do not agree. The hospital lab reports are difficult to read at first glance, and the juvenile court called them "a little funky", but they reflect that methamphetamines were "*detected*."[4] (Italics added.) In addition, a medical professional *told* the Agency they reflect a positive result.

Lab tests aside, we also agree with the Agency that there was ample evidence that mother's positive test at the hospital "was not isolated but part of a pattern of ongoing substance abuse" which is accurately summarized in the respondent's brief. For example, although she denied it on the witness

_____

suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review"]; accord, *Bishop v. The Bishop's School* (2022) 86 Cal.App.5th 893, 910.) Such an argument also is defied by the record. Mother's addiction struggles, and resources and steps to help her address them, were addressed in every status report filed below; she herself admitted she had an addiction that made it difficult for her to stop using substances; and in closing argument at the contested hearing, her counsel did not contend that mother's substance abuse generally was beyond the scope of the pleadings and addressed the issue on the merits.

[4] The October 14 report attached to the detention report indicated that mother's initial "screening" for drugs had been completed but a separate "confirmation panel" was still "in process." Her screening results concerning amphetamines and methamphetamines indicated "T'FOLLOW" rather than "negative," which the emergency response social worker testified was a descriptor that meant the lab *confirmed* the presence of a substance but not the levels.

The October 17 lab result attached to the detention report stated that both substances were in fact "detected" in mother's "confirmation" panel.

And at the contested hearing, mother herself introduced another document (entitled "Comment, Amphetamine Confirmation, Urine, Amphetamine Confirmation Panel") reporting an "abnormal" result on her amphetamine confirmation panel. The parties stipulated it was the confirmation lab result received from a medical social worker at the hospital.

4

stand, mother herself disclosed to her lead social worker she used methamphetamine during her pregnancy, had tried to stop when she found out she was pregnant, but was unable to refrain from using because she was addicted and homeless. And there is ample evidence that she continued to use methamphetamine after L.R. was born. For example, she herself testified she resumed two weeks after L.R. was born. And although she claimed to have stopped about two months later (around January 1), the court could infer from her many subsequent missed drug tests that she had been unable to fully refrain. (See *In re B.D.* (2024) 103 Cal.App.5th 315, 324, fn. 4 ["one reasonable inference from a parent's refusal to submit to drug testing at the agency's request, knowing that the agency is attempting to confirm or rule out substance abuse, is that the parent fears such tests would be positive"].)

Parental substance abuse alone, of course, is not a basis for asserting dependency jurisdiction; there must also be proof it poses a substantial risk of danger to the child, which may include an inability to provide the child with regular care. (*In re N.R.* (2023) 15 Cal.5th 520, 559-561 (*N.R.*); § 300, subd. (b)(1).) In her reply brief, mother asserts that there is no nexus between mother's substance abuse and a risk of harm to L.R., who was born healthy, and that mother's visits with her were appropriate. But this overlooks mother's admitted drug use during her pregnancy, which the court could infer she *knew* had already placed her (as yet unborn) child at risk because she admittedly tried to refrain while pregnant but could not.[5] The court also could reasonably infer a substantial risk mother would continue to

_____

[5] Unlike in many cases that come before us, L.R. fortunately was not born with a positive toxicology result or any medical issues. But mother's drug use during her pregnancy nonetheless posed a *risk* that she would be affected.

5

engage in the same behavior after L.R. was born despite the danger it could pose to an infant: her addiction was so serious that she showed up to a meeting with her lead social worker under the influence and incoherent. Given mother's inability to refrain from using drugs at a juncture so critical to her in her role as a parent, the court could reasonably infer she would have difficulty refraining from using drugs at other equally important times when caring for her newborn infant round the clock. And she had not yet begun any drug treatment programs. Mother cites no authority suggesting such evidence was insufficient to establish a substantial risk that L.R., a newborn, would be endangered in her custody. Appellate courts have affirmed the exercise of jurisdiction in similar circumstances. (See, e.g., *In re E.E.* (2020) 49 Cal.App.5th 195, 212-213 [children properly declared dependents based on, inter alia, mother's past substance abuse including use of drugs while pregnant, mother's dishonesty about extent of drug use, missed drug tests and fact she "had not seriously begun any services to address her issues"]; *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1217, disapproved on another ground in *N.R.*, *supra,* 15 Cal.5th at p. 560, fn. 18; see also *N.R.*, at p. 559 [while substance abuse alone is not prima facie evidence of risk, "a child's youth and maturity level can bear upon the care that the child may require and whether a parent's . . . substance abuse places the child at substantial risk of serious physical harm" and "Courts can properly take these facts regarding a child into account, together with all other relevant evidence"].)

We also perceive no error in the juvenile court's decision to remove L.R. from mother's custody rather than order family maintenance services.

There was sufficient evidence to support the order removing L.R. from mother's custody, a finding supported by substantial evidence measured by the required clear and convincing evidence standard of proof. (See § 361,

6

subd. (c)(1).) Mother cites no authority suggesting the evidence of substantial danger here was insufficient. Unlike situations involving domestic violence or physical child abuse where a child may safely reside with one or both parents if the parents are ordered to live apart or the offending parent is required to move out, as in the authority mother cites (see *In re M.V.* (2022) 78 Cal.App.5th 944, 964-965, 968, 969; *In re Ashly F.* (2014) 225 Cal.App.4th 803, 810), mother was addicted to narcotics that she was powerless at times to resist. No court-ordered living arrangement could eliminate the risks to an infant posed by her addiction.[6] Mother's cited authority also is inapt because unlike in those cases (see *M.V.*, at p. 968; *Ashly F.*, at p. 810), apart from her two-day stay at the first residential placement she had been offered, mother had not participated in any of the voluntary case plan services the Agency had made available to her and had made no progress with respect to the Agency's concerns.

We are not insensitive to the challenges posed by addiction. And we commend mother's self-reported efforts to get clean and sober, as well as the

---

[6] Mother says the court and Agency failed to consider the lesser alternative of allowing her to maintain custody of L.R. while living with a relative such as her older sister and receiving family maintenance services. But there was ample evidence no relative was willing to take her in. Although at the detention hearing mother's counsel reported mother was *at that time* living with her older sister, later on mother stayed temporarily at the home of the paternal grandfather who objected to her remaining there and by the time of the contested hearing, mother was on her own—she testified she sometimes stayed with friends (whose homes she implied weren't suitable for an infant ("All my friends be like, oh yeah, she can come here. I'm like, no")), sometimes in a hotel room and sometimes in her van. Numerous relatives were interviewed, all of them were aware mother was homeless, and none volunteered that they were amenable to offering a home to mother and her baby, much less before mother had enrolled in any substance abuse program or been able to stay free of drugs.

uniformly positive reports of her visits with L.R. But on this record, the court's decision to remove L.R. from her custody was supported by substantial evidence of danger, measured by the clear and convincing standard. (See *In re E.E., supra*, 49 Cal.App.5th at pp. 215, 217 [affirming dispositional order removing children from custody of mother who used drugs during pregnancy and did not meaningfully engage in services to address her drug use].)

Mother also says the department failed to make reasonable efforts to prevent the need for removing L.R. from her custody. But the record demonstrates otherwise. The status reports and testimony at the hearing contain ample evidence of the extensive efforts the Agency undertook to help mother engage in voluntary services for three months, including through the assistance of a dedicated, specially assigned case worker.

Finally, the parties agree that the juvenile court did not comply with its initial duty of inquiry into L.R.'s potential Indian heritage. (§ 224.2, subd. (b); see also § 224.1, subd. (c)(1) [defining "extended family member"].) It is undisputed the Agency made no inquiry about L.R.'s possible Indian heritage when it interviewed mother's sister, A.J. or mother's great aunt. The parties agree these errors warrant conditional reversal. A child welfare agency's failure to make a proper initial inquiry under section 224.2 constitutes reversible error. (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1128, 1136.) An inadequate inquiry requires conditional reversal of the juvenile court's order with directions to the agency to conduct an adequate investigation, supported by record documentation in compliance with California Rules of Court, rule 5.481(a)(5). (*Dezi C.,* at pp. 1125, 1136.) That is appropriate here.

8

We do not agree, however, with mother's assertion the Agency failed to make diligent efforts to contact the *paternal* relatives to inquire about L.R.'s possible Indian ancestry. She asserts there is no record of the Agency asking the paternal grandfather about this and the reports contain no details about father's family history, "so it is unclear whether siblings, cousins or other relatives of the father should have been interviewed." But, contrary to mother's assertion, the Agency filed an "ICWA Relative Compliance Report" that contains a paternal family chart listing numerous paternal relatives and the Agency's effort to contact them, several to no avail, *including* the paternal grandfather who apparently did not return a voicemail message left for him. The report also stated the Agency had enlisted the assistance of an outside agency in its search for L.R.'s relatives. The Agency does not concede that inquiry of the paternal relatives was inadequate and discusses those documented efforts. Mother does not respond to that evidence or the Agency's points in her reply brief. "[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review. [Citations.] ' "On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case." ' " (*In re Dezi C.*, *supra,* 16 Cal.5th at p. 1141.) By failing to address these documented efforts or show how they were inadequate, mother has failed to demonstrate that inquiry of the paternal relatives was inadequate. Accordingly, we will limit our conditional remand to the maternal relatives.

## DISPOSITION

The disposition order is conditionally reversed and the matter is remanded to the juvenile court for compliance with the inquiry and notice

9

requirements of sections 224.2 and 224.3 and the documentation provisions of California Rules of Court, rule 5.481(a)(5), consistent with this opinion. If the juvenile court thereafter finds a proper and adequate further inquiry and due diligence has been conducted and concludes ICWA does not apply (§ 224.2, subd. (i)(2)), then the court shall reinstate the disposition order. If the juvenile court concludes ICWA applies, then it shall proceed in conformity with ICWA and California implementing provisions. (See 25 U.S.C., § 1912, subd. (a); §§ 224.2, subd. (i)(1); 224.3, 224.4.)

STEWART, P. J.


We concur.


RICHMAN, J.


MILLER, J.


*In re L R.* (A170204)